*E-Filed 12/17/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SUE QUATELA, | No. C 10-03422 |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE** |
| v. | |
| STRYKER CORPORATION, et al., | |
| Defendants. | |

I. INTRODUCTION

In this products liability case, plaintiff Sue Quatela alleges she was injured when her physician implanted a prescription infusion pump following surgery on her shoulder. Quatela's complaint asserts six claims for relief: (1) negligence; (2) strict product liability; (3) breach of express warranty; (4) breach of implied warranty; (5) negligent misrepresentation; and (6) fraudulent concealment. Defendant Stryker Corporation moved to dismiss four of the claims for relief and to strike certain specific allegations.

After the motion was filed, the parties stipulated to permit Quatela to file an amended complaint that addressed one aspect of the motion to strike, which Stryker then withdrew. As the amended complaint is otherwise substantively identical to the original complaint, the motion to

1 dismiss and the balance of the motion to strike will be deemed to be directed at the amended
2 complaint. For the reasons stated below, the motion to dismiss will be granted with leave to amend
3 in part, and without leave to amend in part. The motion to strike will be denied.

## II. FACTS

According to the First Amended Complaint ("FAC"), Quatela underwent a left shoulder arthroscopy, synovectomy, and closed manipulation in November of 2002. In connection with that procedure, Quatela's physician inserted a PainPump 2 Day Infusion Set, designed and manufactured by Stryker, into her left shoulder. The pain pump is designed to deliver anesthetic pain medication directly into the glenohumeral joint (the joint connecting the arm to the shoulder) for seventy-two hours immediately following arthroscopic or open shoulder surgery. Quatela alleges that the pain pump was used to infuse Marcaine, a local anesthetic manufactured, promoted and/or distributed by defendants AstraZeneca Pharmaceuticals, LP and AstraZeneca, LP.

Quatela contends that this series of events caused her to develop glenohumeral chondrolysis, which is a progressive destruction of articular cartilage in the glenohumeral joint. This condition results in secondary joint space narrowing, constant pain, and loss of full use of the shoulder and/or arm.

## III. MOTION TO DISMISS

### A. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court, however, is not required "to accept as true

allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008).  Although they may provide the framework for a complaint, legal conclusions need not be accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50, (2009); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  Furthermore, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### B. Breach of Express and Implied Warranty

Stryker moves to dismiss the third claim for breach of express warranty and the fourth claim for breach of implied warranty, contending it was not in privity with Quatela.  California law once provided that privity of contract was necessary in an action for breach of either express or implied warranty and that no privity existed between the original seller and a subsequent purchaser unconnected to the original sale.  *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 695 (1954). California courts have since recognized an exception to the privity requirement in numerous cases involving foodstuffs, and then more recently, drugs.  *See Gottsdanker v. Cutter Laboratories* 182 Cal.App.2d 602, 606-607 (1960) (tracing emergence of exception in food cases, and extending it to a vaccine).  Quatela argues that the Stryker pain pump—which was used to deliver anesthesia—should be treated like a drug such that, under *Gottsdanker*, she need not show privity.

The Ninth Circuit has recognized that "California courts have painstakingly established the scope of the privity requirement . . . and a federal court sitting in diversity is not free to create new exceptions to it."  *Clemens*, 534 F.3d at 1024; *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4, (1975) (a federal court in a diversity case is not free to "engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits.").  Quatela's suggestion that the privity requirement could be dispensed with here is foreclosed by *Evraets v. Intermedics Intraocular, Inc.*

29 Cal.App.4th 779 (1994). In that case, the allegedly defective product was an intraocular lens, surgically implanted into the plaintiff's eye after removal of a cataract. The trial court in *Evraets* sustained a demurrer to claims based both on express and implied warranties.[1] The appellate court affirmed as to the implied warranty claim, finding the lack of privity to be fatal. In so doing, the court observed:

> Evraets did not rely on [the defendants'] judgment that an intraocular device was appropriate for him. Rather, he relied upon his physician's skill or judgment to select or furnish a suitable product. Thus, Evraets cannot sue the manufacturers, suppliers or distributors of the lens on an implied warranty of fitness theory.

29 Cal.App.4th at 788.

Likewise, Quatela cannot be said to have relied on Stryker's judgment that its product was safe and appropriate for use following her surgery. Rather, she necessarily relied on the judgment of the medical professionals who treated her. Although Quatela argues she should have the right to complain that Stryker inadequately advised those professionals as to the dangers of the product, she is in no different position than the *Evraets* plaintiff, whose doctor may likewise have relied on the representations of the manufacturer and distributor of the intraocular lens. *See also Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058-59 (Cal. Ct. App. 2008) (plaintiff was not in privity with heart valve manufacturer because she relied on the skill and judgment of her physician who prescribed defendant's product). Thus, the lack of privity between Quatela and Stryker bars her claim for breach of implied warranty under California law. Because there is no indication that Quatela could allege additional or different facts that would demonstrate privity or some exception thereto, no leave to amend will be granted as to the implied warranty claim.

Quatela's claim based on *express* warranty, however, is a different matter. As the *Evraets* court noted, California case law generally has abolished the requirement of privity for express warranty claims. *Evraets*, 29 Cal.App.4th at 789 n. 4 (citing *Seely v. White Motor Co.* 63 Cal.2d 9

---

[1] In addition to privity issues, *Evraets* had to consider whether federal regulation of medical devices preempted the state law claims. Those issues do not affect the applicability to this case of the *Evraets* holdings regarding privity.

1   (1965) and *Rodrigues v. Campbell Industries*, 87 Cal.App.3d 494 (1978)).  After concluding that the

2   express warranty claim also was not preempted under federal law, the *Evraets* court held that the

3   demurrer to that claim should have been overruled. *Evraets*, 29 Cal.App.4th at 858.

4         It is not entirely clear why, regardless of the existence or non-existence of any privity

5   requirement, the issue raised by the *Evraets* court regarding the plaintiff's lack of *reliance* on any

6   representations of the product manufacturer or distributor would not equally apply to the express

7   warranty claim.  Indeed, it appears that the earliest California decisions suggesting that privity not

8   be required for express warranty claims did so for the very reason that an end consumer should be

9   entitled to rely on written representations that are communicated to him or her, regardless of where

10  in the supply chain those representations originated. *E.g. Burr v. Sherwin Williams Co.*, *supra*, 42

11  Cal.2d at 696 ("Another possible exception to the general rule is found in a few cases where the

12  purchaser of a product relied on representations made by the manufacturer in labels or advertising

13  material, and recovery from the manufacturer was allowed on the theory of express warranty

14  without a showing of privity.").

15        At this juncture, it is not necessary to determine whether proof of some form of reliance is

16  still required to recover on an express warranty claim under California law, even if strict privity is

17  no longer a prerequisite. *Evraets* stands as clear authority that at least at the pleading stage,

18  California law permits a claim for breach of an express warranty to go forward under circumstances

19  similar to these.  That said, the complaint as presently constituted fails to allege any express

20  warranties actually made by Stryker, except in the most general and conclusory terms.  Accordingly,

21  the claim for breach of express warranty will be denied, with leave to amend.[2]

---

[2] It is not entirely clear what significance, if any, the existence or non-existence of warranty claims in this action is likely to have.  As the *Seeley* court noted, strict products liability law was developed largely for the very purpose of providing a remedy to consumers injured by defective products, because otherwise, "'[o]nly by some violent pounding and twisting,' . . . could the warranty doctrine be made to serve this purpose." 63 Cal.2d at 15 (citation omitted).  Here, Stryker has not moved to dismiss the strict liability or negligence claims, which would seem to provide a more natural basis for any recovery by Quatela in this action.  It may be that this dispute at the pleading stage will have little bearing on the action other than with respect to a handful of jury instructions that will or will not be given.  The Court reserves the right, of course, to determine what jury instructions are appropriate when that time comes.

### C.   Negligent Misrepresentation and Fraudulent Concealment

Stryker also moves to dismiss plaintiff's fifth and sixth claims for negligent misrepresentation and fraudulent concealment. Stryker argues that these claims are subject to Federal Rule of Civil Procedure 9(b), and that the allegations in the complaint do not meet this heightened pleading standard. Fed. R. Civ. Proc. 9(b). In response, Quatela argues that the time, place, and manner of the interactions between Quatela and Stryker's products can be inferred from the Complaint, which states the date she was prescribed the pain pump, and the conduct surrounding that event.

"It is well established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Additionally, the Ninth Circuit has acknowledged that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir.2007) (internal quotation and citation omitted). The negligent representation and fraudulent concealment claims are therefore subject to Rule 9(b), and Quatela is required to differentiate between the allegedly fraudulent conduct of Stryker and other defendants. Moreover, Quatela must specifically allege Stryker's role in the purported fraud, the "time place and manner of each act of fraud," and the "who, what, when, where, and how" of the charged misconduct. *Vess*, 317 F.3d at 1106. *See also*, *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (RICO allegations against multiple defendants must specify the role of each defendant in each scheme); *Sherman v. Stryker Corp.*, No. 09-224, 2009 WL 224166, at *2 (C.D. Cal. Mar. 30, 2009).

Here, the complaint does not set forth the details necessary to satisfy Rule 9(b). The misrepresentations are alleged only in the most general and conclusory fashion, with virtually no

1 distinction between the conduct of Stryker and other defendants.[3]   Accordingly, the motion to
2 dismiss these claims will be granted, with leave to amend.

### IV.     MOTION TO STRIKE

#### A.     Legal Standard

Federal Rule of Civil Procedure 12(f) provides that a "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). "[T]he function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Properly executed, a motion to strike streamlines a judge's inquiry by focusing his or her attention only on the "real issues in the case." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  It eliminates from consideration that which "can have no possible bearing on the subject matter of the litigation." *Naton v. Bank of California*, 72 F.R.D. 550, 552 n.4 (N.D. Cal. 1976).

For the purposes of a motion to strike, immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy,* 984 F.2d at 1527 (*quoting* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706-07 (1990)). Impertinent matter consists of statements that "do not pertain, and are not necessary, to the issues in question." *Fantasy*, 984 F.2d at 1527 (*quoting* Wright, at 711). Scandalous matters are allegations that unnecessarily reflect on "the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Consumer Solutions Reo, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1021 (*quoting Cobell v. Norton*, 224 F.R.D. 1, 5 (D. D.C. 2004)). Scandalous material includes "allegations that cast a cruelly derogatory light on

---

[3]  After this motion was heard, Quatela voluntarily dismissed the other defendants. That dismissal, however, does not cure the defect that the complaint fails to specify what Stryker, as opposed to others, allegedly misrepresented or concealed.

a party or other person." *In re 2TheMart.com Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

B.  Discussion

Stryker moves to strike various allegations in the complaint that appear to fault it for failing adequately to warn Quatela herself, the public at large, and the Food and Drug Administration of the risks associated with its pain pump. Stryker contends that such allegations are legally untenable in that California law merely requires a prescription product manufacturer to warn the medical professionals who use the device, and not the patient or general public. *See Carlin v. Superior Court*, 13 Cal. 4th 1104, 1116 (Cal. 1996) (holding that in prescription drug cases, the duty to warn runs to the physician, not the patient). Stryker also argues that federal law precludes state-law claims based on allegations that a manufacturer made misrepresentations to the FDA. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S 341, 348 (2001) (state-law claims that a defendant misled the FDA are preempted by federal law). In opposition, Quatela disclaims any intent to pursue a fraud-on-the FDA claim, and contends the challenged allegations only provide background and context for her claims against Stryker.

At heart, the allegations Stryker seeks to strike are all phrased as mere legal conclusions regarding the scope of Stryker's duty to warn. They do not represent or include factual material that Stryker will be required to admit or deny. Even assuming Stryker likely is correct that its legal duty to warn, if any, is of a narrower scope than Quatela has conclusorily asserted, the mere presence in the complaint of erroneous legal conclusions does not rise to the level of material that is "redundant, immaterial, impertinent, or scandalous" such that it must be stricken under Rule 12(f). Accordingly, defendant's motion to strike will be denied.

## V. CONCLUSION

Quatela's claims for breach of express warranty, negligent misrepresentation and fraudulent concealment are dismissed with leave to amend. The breach of implied warranty claim is dismissed without leave to amend. The motion to strike is denied. Any amended complaint shall be filed within 30 days of the date of this order.

IT IS SO ORDERED.

Dated: 12/17/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE